# In the United States Court of Federal Claims

No. 08-0003C
Filed: August 7, 2008
**TO BE PUBLISHED**

| | | |
|---|---|---|
| KENNEY ORTHOPEDIC, LLC, | * | |
| Plaintiff, | * | Certification, 41 U.S.C. § 605(c)(1); Claim, 48 C.F.R. § 2.101; |
| v. | * | Contract Disputes Act of 1978, 41 U.S.C. §§ 601, *et seq*.; Federal Torts Claims Act, |
| THE UNITED STATES, | * | 28 U.S.C. § 1346(b)(1); Jurisdiction; |
| Defendant. | * | Motion To Dismiss, RCFC 12(b)(1); Tucker Act, 28 U.S.C. § 1491. |

**James M. Morris**, Morris & Morris, P.S.C., Lexington, Kentucky, for Plaintiff.

**Jane C. Dempsey**, United States Department of Justice, Washington, D.C., for Defendant.

**MEMORANDUM OPINION AND FINAL ORDER.**

**BRADEN, *Judge*.**

On May 2, 2008, Defendant ("the Government") filed a Partial Motion To Dismiss, asserting that the United States Court of Federal Claims does not have jurisdiction over Counts II, III, and IV of a January 2, 2008 Complaint, filed by Kenney Orthopedic, LLC ("Kenney" or "Plaintiff"), including a request for punitive damages. The court *sua sponte* has dismissed Count I, without prejudice, because Plaintiff failed to submit the breach of contract claim to the Contracting Officer, as required by the Contract Disputes Act of 1978, 41 U.S.C. § 605(a). In addition, the Government's Partial Motion To Dismiss is granted.

## I. RELEVANT FACTS.

### A. The August 15, 2006 Contract With Kenney Orthopedic, LLC.

Kenney provides prosthetic and orthotic devices and services to the United States Government for veterans. *See* Compl. ¶ 1. On August 15, 2006, Kenney entered into Contract No. V249-P-0011 to provide prosthetic and orthotic services for the United States Department of Veterans Affairs ("VA") at the Lexington, Kentucky Medical Center ("the August 15, 2006

Contract"). *See* Pl. Ex. A (Contract No. V249-P-0011). The August 15, 2006 Contract had a base year from August 20, 2006 to August 19, 2007, with two renewable option years. *Id*.

The August 15, 2006 Contract required Kenney to deliver prostheses to the VA no later than 30 calendar days after receipt of a delivery order. *Id*. In addition, Kenney was required to fabricate required artificial limbs in strict conformity with the "prosthetic prescription that has been provided by the VA Amputee Clinic Team." *Id.* No changes could be made without prior approval and written authority from the VA Clinic Team, Prosthetic Representative, or designee. *Id*. Kenney also was required to measure and fit prostheses on "experienced prosthetic wearers." *Id*. The VA, however, assumed responsibility for measuring and fitting first-time prosthetic users. *Id.* The measurement and fitting protocol was delegated to the expertise and discretion of the Amputee Clinic Team, Prosthetic Representative, Chief of Prosthetics, or a prescribed physician, on a case-by-case basis. *Id.* In addition, the fitting and alignment of select prostheses was to be performed under the supervision of a prosthetist, with special training or education for that purpose. *Id.*

### B. The Contracting Officer's December 19, 2006 Letter To Kenney Orthopedic, LLC.

On December 19, 2006, the Contracting Officer ("CO") for the VA Tennessee Valley Healthcare System sent a letter to Kenney stating that the company was not performing in accordance with certain sections of the contract:

> It has been noted that prescriptions are being altered and non-prescribed items are being provided without prior approval. Under the "General Requirements" the section of the [C]ontract for Standards of Performance states "The Contractor shall fabricate all artificial limbs in strict conformance to the prosthetic prescription that has been provided by the VA Amputee Clinic Team. Contractors shall not add or substitute components or alter the beneficiary's limb prescription in any way without prior approval and written authority from the VA Amputee Clinic Team Prosthetic Representative or designee[.]"

Pl. Ex. B (emphasis omitted). Therein, Kenney also was instructed that "fabrication should not begin until the prescription is provided by the VA," and "[t]here will be no reimbursement for non-prescribed items not authorized." *Id*. Kenney was requested "[to] provide a plan to [the VA] no later than December 29, 2006 which will specify [Kenney's] actions for correcting these deficiencies immediately." *Id*.

### C. The December 21, 2006 Proposed Contract Modification.

On December 21, 2006, the VA requested Kenney to amend the August 15, 2006 Contract. *See* Pl. Ex. C. The proposed modification provided:

> Beginning January 1, 2007, please issue the attached Patient Satisfaction Survey to all VA patients to be completed. A consolidated report of the results of these surveys must be sent to your CORT QUARTERLY. The first due date for this report will be March 31, 2007 and every quarter thereafter.

*Id*.

### D. A Dispute Develops Between Kenney Orthopedic, LLC, And The Contracting Officer.

Kenney did not sign the contract modification, but instead, on December 22, 2006, replied to the CO's December 19, 2006 letter, requesting additional information and documentation. *See* Pl. Ex. D. On January 8, 2007, the CO responded, citing a specific delivery of prosthetics that was not reviewed or approved by the VA prior to delivery. *See* Pl. Ex. E ("Clearly in this case of Williams 5967: Kenney Orthopedic did not follow proper procedure nor did he follow the VA prescription and he fabricated the prosthesis prior to VA approval of the quote.") (emphasis omitted).

On January 22, 2007, Kenney filed a "formal written response" explaining that, in the case of "Williams 5967," the prosthetic device was delivered "two days after the prescription [for the device] was provided" by the VA. *See* Pl. Ex. F. Kenney, however, conceded that the "number of prosthetic socks" provided to "Williams 5967" was incorrect, because the prescription called for six socks, and Kenney provided twelve, *i.e.*, "the usual and customary number . . . provided by Medicare as appropriate and medically necessary for proper treatment of prosthetic patients." *Id*. Kenney, however, informed the VA that no reimbursement was requested for the extra socks. *Id*.

On February 27, 2007, the CO sent Kenney a letter "in response to [Kenney's] request for payment of an invoice in the amount of approximately $3,900.00 for a prosthesis for Mr. Williams[1] that was delivered to him on November 3, 2006." Pl. Ex. G. The CO claimed that "on December 20, 2006, Mr. Williams had a new prescription from the VA for a replacement prosthesis[,]" because the prosthesis provided on November 3, 2006 did not fit properly. *Id*. Therefore, "the claim for approximately $3,900.00 to Kenney Orthopedics will be denied based on negligence in providing

[1] "Mr. Williams" appears to be the same patient as "Williams 5967." *See, e.g.*, Pl. Ex. G (reporting that a "prosthesis for Mr. Williams . . . was delivered to him on November 3, 2006").

an appropriately fitting prosthesis[.]" *Id.*; *see also* Pl. Ex. A ("The contractor warrants the artificial limb provided against defective material and/or workmanship for a minimum of 90 calendar days from the date of acceptance."). The CO also advised Kenney that:

> I have been made aware of several instances where veteran's [sic] prescriptions have been altered without having prior approval and written authority from the VA Amputee Clinic Team Prosthetic Representative or designee. **Mr. Kenney this process will not be tolerated anymore. There will be no reimbursement for non-prescripted items not authorized and prescriptions written prior to VA approval of quote**. . . . **If you continue to perform outside the scope of the contract I will be forced to start termination procedures**.

Pl. Ex. G (emphasis in original).

### E. The February 28, 2007 Proposed Contract Modification.

On February 28, 2007, the VA sent Kenney a second modification of the Contract's Prescription Policy for Prosthesis, to address vendors not following the VA's prosthesis prescription and delivery "in some instances." Pl. Ex. H. The second proposed modification provided that: all temporary prostheses will be provided by the VA; the VA has the option to purchase prescribed components for vendors' use; the prosthesis fabrication process should not begin until the VA has issued a written prescription for the prostheses; temporary and definitive prostheses must be delivered to the veteran in the VA's amputee clinic; any covers for the prostheses will not be paid for or provided until the prosthesis is checked out by the amputee clinic; and any questions regarding prescription or other codes must be brought to the attention of the VA Prosthetist. *Id.*

### F. A Dispute Develops Between Kenney Orthopedic, LLC, And The Veterans Administration's Network Contracting Manager.

On March 9, 2007, counsel for Kenney called the VA's Network Contracting Manager, to inquire why the VA had not responded to Kenney's January 22, 2007 letter, and express concern about the allegations of negligence in the CO's February 27, 2007 letter. *See* Compl. ¶ 11. In addition, the VA's characterization of Mr. William's December 20, 2006 replacement as a "prosthesis" was challenged, because it was a "replacement socket," which was prescribed. *Id.* Again, these concerns were restated in a March 13, 2007 letter from Kenney, along with a demand "for immediate payment for the delivery of services" for Mr. Williams. *See* Pl. Ex. I (The CO's February 27, 2007 assertions "are grossly inaccurate.").

On March 14, 2007, another letter was sent to the CO, stating that "Kenney . . . has now received requests for socket replacements or prostheses for three additional VA patients due to anatomical changes associated with atrophy in the amputated limb." Pl. Ex. J. The letter also advised that, "given the difficulties associated with the other socket replacements," Kenney was "extremely concerned" that the VA would refuse to reimburse Kenney for the socket replacements.

*Id.* "Assurances" were requested that the VA would not "continue to intentionally interfere with the necessary ongoing medical treatment of Kenney Orthopedics [sic] patients, and that Kenney Orthopedics can expect appropriate payment for services rendered in accordance with the anatomical changes associated with these additional patients." *Id.*

On March 30, 2007, the VA responded that Mr. Williams' December 20, 2006 prescription was for a "replacement prosthesis," and the denial of the $3,900.00 claim for Mr. Williams' prosthesis was "supported in full." *See* Pl. Ex. K. Moreover, the VA records indicated that Mr. Williams received his original prosthesis on November 3, 2006, prior to Kenney receiving a November 30, 2006 purchase order from the VA, in contravention of the terms of the August 15, 2006 Contract. *Id.*; *see also* Pl. Ex. A ("The VA shall require the contractor to deliver items ordered under this contract no later than 30 calendar days *after* receipt of the delivery order.") (emphasis added). The VA emphasized that it was not interfering with "Kenney patients" care, because the relevant patients were under the care of the VA, not Kenney. *See* Pl. Ex. K. Moreover, "any refusal to treat patients referred under this contract shall be construed as a failure to perform under the terms and conditions of this contract." *Id.* A "face to face" meeting was proposed to discuss the delivery order and payment process. *Id.*

On April 19, 2007, the VA's Prosthetic Manager requested Kenney to provide a "consolidated report" of the results of a Patient Satisfaction Survey, required by the December 21, 2006 Amendment of the Contract. *See* Pl. Ex. L; *see also* Pl. Ex. C (Dec. 21, 2006 Contract Modification "A," unsigned by Plaintiff). On that same date, Kenney's Business Office Manager responded that "if the VA desires to change the terms of the [C]ontract, both parties must agree to the change." *See* Pl. Ex. M; *see also* Pl. Ex. A (Contract Terms And Conditions) ("52.212-4(c) Changes. Changes in the terms and conditions of this contract may be made only by written agreement of the parties.").

On April 23, 2007, Kenney also sent a letter to the VA reiterating Kenney's position that the December 21, 2006 Amendment was unilateral and was not part of the August 15, 2006 Contract.[2] *See* Pl. Ex. N.

In addition, Kenney pointed out that the March 30, 2007 letter was incorrect about the denial of the "$3,952.40" claim, because "[t]he order was for a replacement ***socket***, not a replacement prosthesis." *See* Pl. Ex. O (emphasis in original). Moreover, "contrary to [the VA's] assertions, the prescription for [the prosthesis] . . . was given to [Kenney] on November 1, 2006, and no prosthetic device was provided until November 3, 2006[.]" *Id.* In addition, Kenney accused the VA of intentionally interfering "with [Kenney]'s ability to provide ongoing services to [Kenney's] patients[,]" and making "bold assertions regarding [Kenney]'s treatment of patients" without "a single shred of evidence." *Id.*

---

[2] The letter also proposed to negotiate a bilateral agreement for a quarterly satisfaction report, in exchange for "payments to Kenney Orthopedic for its expenditures related thereto[.]" Pl. Ex. N.

**G. On July 2, 2007, The Veterans Administration Sent Kenney Orthopedic, LLC, A Preliminary Notice To Extend The August 15, 2006 Contract Option.**

Nevertheless, on July 2, 2007, the CO sent Kenney a preliminary notice of the VA's intent to extend the August 15, 2006 Contract, "[a]s specified in FAR 52.217-09, Option to Extend the Term of the Contract[.]" *See* Pl. Ex. P; *see also* Pl. Ex. A (Contract Terms and Conditions) ("52.217-9(a) The Government may extend the term of [the Contract] by written notice to [Kenney] within the time specified in the [Contract]; provided that the Government gives [Kenney] a preliminary written notice of its intent to extend at least 30 days before the [Contract] expires. The preliminary notice does not commit the Government to an extension."). Subsequently, the CO sent Kenney a signed Modification of Contract form exercising "option year one for VAMC Lexington" with a "period of performance" from August 21, 2007 to August 20, 2008. *See* Pl. Ex. P.

**H. The Contracting Officer's Demand For Cure And Kenney Orthopedic, LLC's Demand For An Independent Review.**

On July 18, 2007, Kenney sent another letter demanding that the VA "retract the statements that were made [about negligence by Kenney] and to issue a formal apology for the gross misstatements and improper allegations." *See* Pl. Ex. Q. The letter pointed out that a "sworn statement received by the patient[3] . . . directly contradicts the [VA's] position vis-a-vis the patient's condition at the time of fitting, and the circumstances leading up to the fitting." *Id.* Kenney also demanded that the VA "provide a proper explanation or retract factually inaccurate statements made regarding the treatment of the patient, and that the compensation due Kenney Orthopedics be forward[ed] immediately." *Id.* A response also was requested regarding the VA's "failure to provide prompt approvals for medically-prescribed devices[,]" an issue that was acknowledged by the VA in previous correspondence but never addressed. *Id.*

On August 29, 2007, the CO advised Kenney that:

> the Government considers [Kenney's] failure to comply with the ordering requirements required in [Kenney's] contract a condition that is endangering performance of the contract. Therefore, unless this condition is cured [by Kenney preparing a signed statement attesting Kenney's commitment to comply with the terms and conditions of the Contract] . . . within 10 days after receipt of this notice the Government may terminate for default under the terms and conditions of the [FAR] 52.212-4(m) Termination for Cause clause of this contract.

Pl. Ex. R.

---

[3] "The patient" presumably is Mr. Williams, because the circumstances of his fitting appear to be central to the dispute between the parties to the August 15, 2006 Contract.

The CO also complained that Kenney continued to "prescribe or alter VA prescriptions [in] violation of [the Contract]." *Id.* (citing an event where Kenney allegedly "failed to wait for a Request for Quote and Purchase Order and proceeded with fabrication of a device that was not the prescribed product"). In addition, the CO warned Kenney that any failure to perform services pursuant to the Contract during the 10 day period would be regarded "as grounds for termination for cause[.]" *Id.*

On September 14, 2007, Kenney demanded an acknowledgment of the VA's "repeated actions designed to defame and besmirch [Kenney]." Pl. Ex. S. This letter also requested that an independent party, with knowledge of prosthetic procedures, review Kenney's actions, and that the CO be removed. *Id.* ("[W]e demand, **immediately**, that [the CO] be removed from decision-making processes involving Kenney Orthopedics, and that an independent party be brought in to investigate [the CO's] ongoing wrongdoing in this particular instance.") (emphasis in original). The letter contested the CO's reference to the "Prescription Policy for Prosthetics" as the proper policy under the Contract. *Id.* ("The 'policy' to which [the CO makes] reference is a ***local*** VA policy and has ***no*** bearing upon the signed contract between the VA and [Kenney].") (emphasis in original). The letter emphasized that Kenney was in compliance with the "Prescription Policy for Prosthetics," as Kenney provided preliminary diagnostic fittings of the prosthetic device, not the "definitive prosthetic fabrication," prohibited by the "Prescription Policy for Prosthetics" without a prescription or approval. *Id.* Finally, the letter argued that this policy did not bar Kenney from delivering the definitive prosthetic fabrication prior to VA approval.[4] *Id.* Moreover, the CO's assertion that Kenney failed to provide a prescribed product was "directly refuted by the actual Request for Quote that was received by [Kenney] as well as the prescription agreed upon by the VA Physician." *Id.* The letter demanded a response to the "serious claims" in the CO's August 29, 2007 letter by an independent party "within ten . . . days of receipt." *Id.*

On September 18, 2007, the CO responded that Kenney failed to comply with the CO's August 29, 2007 "cure notice," requesting "a signed statement attesting [Kenney's] commitment to comply with the terms and condition of the contract." *See* Pl. Ex. T. The CO warned Kenney that:

> if [the VA does] not receive [Kenney's] response to [the VA's] previous letter dated August 29, 2007 before the close of business on **October 2, 2007**[,] the Government may conclude that [Kenney] choose[s] not to cure [Kenney's] deficiency and may exercise its right to terminate for default under the terms and conditions of the [FAR] 52.212-4 (m) Termination for Cause clause of [the Contract].

*Id.* (emphasis in original).

---

[4] The "Prescription Policy For Prosthesis" states that "[d]efinitive prosthesis fabrication process *should* not begin until the VA has written the prescription . . . ; the Request for Quote has been received and reviewed . . . ; [and] the Purchase Order is provided to the contracted . . .vendor." Pl. Ex. H (emphasis added).

On September 24, 2007, Kenney replied that it responded to the August 29, 2007 letter, but reasserted that the VA was in violation of the August 15, 2006 Contract. *See* Pl. Ex. U. An independent party was requested to investigate the allegations in the VA's September 18, 2007 letter. *Id.*

On October 4, 2007, Kenney accused the CO of "improper efforts to interfere with the proper course of treatment with VA patients[,]" and failing to address issues asserted by Kenney in previous correspondence. *See* Pl. Ex. V. The CO was advised that in the future Kenney would be sending all correspondence to Frederick Downs, Jr., the VA's Chief Prosthetics and Clinical Logistics Officer, with the "hope and belief that the local VA's actions will be duly investigated and that appropriate action will be taken where necessary in order to assure that this type of activity does not continue to take place." *Id.*

**I. The Veterans Administration's October 23, 2007 Termination Of The August 15, 2006 Contract.**

On October 23, 2007, the CO sent a letter to Kenney terminating the August 15, 2006 Contract "for cause in its entirety. . . . in accordance with [FAR] 52.212-4(m)[.]"[5] *See* Pl. Ex. W. The CO stated that Kenney had "not responded to the cure notice issued on August 29, 2007 and to the follow up notice issued on September 18, 2007, which required a response to the [CO] on October 2, 2007." *Id.* In addition, the CO cited Kenney's "continual failure to observe the requirements of [the August 15, 2006 Contract], specifically to obtain a purchase order authorizing [Kenney] to proceed with the required services." *Id.* Kenney was instructed to "cease all services on behalf of VA patients and accept no further purchase orders." *Id.* The CO stated that the termination was "the final decision of the Contracting Officer," but Kenney could appeal to the Civilian Board of Contract Appeals ("CBCA")'s "small claim procedure for claims of $100,000 or less[,]" or "directly in the United States [C]ourt of Federal Claims . . . within 12 months of the date [Kenney] receive[d] [the] decision." *Id.*

---

[5] FAR 52.212-4(m) provides, in relevant part, that:

> The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

48 C.F.R. 52.212-4(m) (termination for cause contract clause).

On November 3, 2007, Kenney responded that the company "attempted to resolve [the termination] without need for litigation . . . [and] responded on multiple occasions [to the VA's September 18, 2007 cure notice]." *See* Compl. ¶ 27.

## II. PROCEDURAL HISTORY.

On January 2, 2008, Plaintiff filed a Complaint in the United States Court of Federal Claims. Count I alleges that the VA breached the August 15, 2006 Contract by rejecting some of Plaintiff's bills and impermissibly requiring Plaintiff to adhere to a modification of the August 15, 2006 Contract that was unilaterally imposed without Plaintiff's consent. *See* Compl. ¶¶ 28-35. Count II alleges that the VA's false allegations and intentional interference with Plaintiff's ability to perform under the August 15, 2006 Contract have interfered with Plaintiff's current and future business efforts. *Id*. ¶¶ 36-42. Count III alleges that the VA "knowingly and intentionally made false statements about [Plaintiff]" in order to damage or destroy Plaintiff's established business relationship with VA patients. *Id.* ¶¶ 43-48. Count IV alleges that the VA intentionally has inflicted emotional distress on Plaintiff. *Id.* ¶¶ 49-53. Consequently, the Complaint seeks actual damages with interest, plus general, compensatory, and punitive damages. *Id.* at 7. In addition, the January 2, 2008 Complaint seeks fees and costs, as well as any further relief, that the Court believes is just and proper. *Id.* (Prayer For Relief).

On May 2, 2008, the Government filed a Partial Motion To Dismiss Counts II, III, and IV of the January 2, 2008 Complaint and Plaintiff's claim for punitive damages ("Gov't Mot. Dis.").

On July 2, 2008, Plaintiff filed a Response ("Pl. Response"), withdrawing the demand for punitive damages, but requesting the court to deny the Government's Motion to Dismiss Counts II, III, and IV of the January 2, 2008 Complaint. On July 21, 2008, the Government filed a Reply ("Gov't Reply").

On July 28, 2008, the court convened a status conference to determine whether Plaintiff filed a breach of contract claim with the CO, pursuant to 41 U.S.C. § 605(a), and submitted the required certification. On July 29, 2008, Plaintiff advised the court that Plaintiff had not submitted a certified claim to the CO, but argued that Count I of the Complaint was an appeal of the CO's termination decision.

## III. DISCUSSION.

### A. Jurisdiction.

The Tucker Act authorizes the United States Court of Federal Claims "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "only a jurisdictional statute; it does not create

any substantive right enforceable against the United States for money damages . . . the Act merely confers jurisdiction upon it whenever the substantive right exists." *United States* v. *Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States* v. *Testan*, 424 U.S. 392, 398 (1976)). Therefore, to satisfy the jurisdictional requirements of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages. *See Todd* v. *United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The parties may raise a challenge to the court's subject matter jurisdiction at any time, or, alternatively, the court may do so *sua sponte*. *See Folden* v. *United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004).

The Contract Disputes Act of 1978 ("CDA") authorizes the United States Court of Federal Claims to adjudicate claims for monetary damages arising from "any express or implied contract . . . entered into by an executive agency for . . . the procurement of services[.]" 41 U.S.C. § 602(a)(2). Each claim alleged in the Complaint also must satisfy the mandatory requirements of the CDA before the United States Court of Federal Claims can exercise subject matter jurisdiction. *See* 41 U.S.C. § 605(a); *see also B.D. Click Co.* v. *United States*, 1 Cl. Ct. 239, 241 (1982) ("The plaintiff has failed to produce or cite any evidence establishing either that it submitted a written claim to the contracting officer or that the contracting officer rendered a final decision. . . . Consequently, the court lacks subject matter jurisdiction to consider plaintiff's claims[.]").

**B. Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(1).**

A challenge to the "court's general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor. " *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). The Plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question, it [is] incumbent upon plaintiff to come forward with evidence establishing the court's jurisdiction."). If the court determines that it does not have jurisdiction over the claims alleged, a motion to dismiss must be granted. *See* RCFC 12(b)(1).

### C. The Court Does Not Have Jurisdiction Over Count I Of The January 2, 2008 Complaint.

The United States Court of Federal Claims has jurisdiction over claims directly challenging a contracting officer's final decision. *See Educators Assocs.* v. *United States*, 41 Fed. Cl. 811, 814 (1998) ("Jurisdiction in this case is based on the Contract Disputes Act of 1978, 41 U.S.C. § 609(a), that allows plaintiff to directly appeal a final decision of the contracting officer to the United States Court of Federal Claims."); *see also K&S Contr*. v. *United States*, 35 Fed. Cl. 270, 274 (2000) (holding that a plaintiff may bring an action directly to the United States Court of Federal Claims to challenge a contracting officer's default termination decision).

Congress, however, requires that a government contractor must submit any other claim arising under a contract in writing to the relevant CO for a decision as a jurisdictional prerequisite to filing a complaint in the United States Court of Federal Claims. *See* 41 U.S.C. § 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision."); *see also Greenhill Reforestation* v. *United States*, 39 Fed. Cl. 683, 685 (1997) ("The requirement in the CDA that claims 'shall be in writing and submitted to the contracting officer for decision,' has been construed as a jurisdictional prerequisite to proceeding in this court.") (citation omitted).

For claims over $100,000, Congress also requires that "the contractor . . . certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor." 41 U.S.C. § 605(c)(1); *see also Donald M. Drake Co*. v. *United States*, 12 Cl. Ct. 518, 519 (1987) ("In order for [the United States Court of Federal Claims] to entertain a direct access action under the CDA, plaintiff must have: 1) submitted a written and properly certified claim to the contracting officer, and 2) obtained a final decision by the contracting officer on the claim.") (citation omitted); *United Sales* v. *United States*, 34 Fed. Cl. 88, 94 (1995) ("[T]he CDA requires, as a jurisdictional prerequisite, that a contractor's claim . . . be submitted . . . with the proper certification."). Certification may not be waived, as it was "enacted to hold contractors liable for fraudulent, unwarranted and inflated claims and to encourage settlements." *United Sales*, 34 Fed. Cl. at 95 (citing *Skelly & Loy* v. *United States*, 231 Ct. Cl. 370, 376 n.11 (1982)). In addition, certification cannot be made in a "piecemeal fashion." *Black Star Sec., Inc.* v. *United States*, 5 Cl. Ct. 110, 115 (1984).

Count I of the January 2, 2008 Complaint asserts that the VA breached the August 15, 2006 Contract by rejecting payment of valid invoices and impermissibly requiring Plaintiff to adhere to unilateral contract modifications. *See* Compl. ¶¶ 28-35. Accordingly, the Complaint seeks payment for unpaid services and damages resulting from the VA's alleged breach of contract, for no less than $500,000, plus interest, costs, and attorney's fees. *Id*. at 7. The record, however, does not evidence that Plaintiff submitted a certified claim to the CO for breach of contract damages. *See James M. Ellett Constr. Co.* v. *United States*, 93 F.3d 1537, 1542 (Fed. Cir. 1996) ("Under the FAR, there are

three requirements a nonroutine submission must meet to be a 'claim.' It must be: (1) a written demand or assertion, (2) seeking as a matter of right, (3) the payment of money in a sum certain.") (citing 48 C.F.R. § 33.201). Accordingly, the CDA's exhaustion requirements have not been satisfied as to Count I of the Complaint, and this case is dismissed.[6] *See* 41 U.S.C. § 605(a). Plaintiff may file a new complaint alleging Count I in the United States Court of Federal Claims after it satisfies the jurisdictional prerequisites discussed herein. *Id*.

**D. The Court Does Not Have Jurisdiction Over Counts II, III, And IV Of The January 2, 2008 Complaint.**

**1. The Government's Argument.**

The Government argues that the court does not have subject matter jurisdiction over Counts II-IV of the January 2, 2008 Complaint, *i.e*., "Tortious Interference with a Prospective Advantage," "Tortious Interference with a Contractual Advantage," and "Intentional Infliction of Emotional Distress." *See* Gov't Mot. Dis. at 3-4. The Government cites multiple cases holding that "[i]t is well-settled that the Tucker Act's jurisdictional grant does not extend to cases sounding in tort," and argues that Plaintiff's allegations that "the VA knowingly and intentionally made false statements about [Plaintiff] . . . . clearly indicate that the essence of [Plaintiff's] claims at issue lie in tort." *Id.* (citing 28 U.S.C. § 1491(a)(1); *Keene Corp.* v. *United States*, 508 U.S. 200, 214 (1993); *Jentoft* v. *United States*, 450 F.3d 1342, 1349-50 (Fed. Cir. 2006); *Edelmann* v. *United States*, 76 Fed. Cl. 376, 380 (2007); and *Cottrell* v. *United States*, 42 Fed. Cl. 144 (1998)). The Government concludes that Counts II, III, and IV should be dismissed, because "[c]laims that sound in tort are expressly excluded from the jurisdiction of [the United States Court of Federal Claims][.]" *Id.* (citing *L'Enfant Plaza Properties, Inc.* v. *United States*, 227 Ct. Cl. 1, 21 (1981) (finding that a failure to adequately show a connection between the alleged wrongful conduct and any contractual obligations will result in dismissal of plaintiff's tort claims)).

The Government also asserts that the court does not have jurisdiction over Plaintiff's claim for punitive damages, because the United States Court of Federal Claims "lacks authority to grant punitive damages." *See* Gov't Mot. Dis. at 4-5 (citing *Greene* v. *United States*, 65 Fed. Cl. 375, 379 (2005); and *Fields* v. *United States*, 53 Fed. Cl. 412, 420 (2002)).

**2. The Plaintiff's Response.**

Plaintiff responds that the United States Court of Federal Claims has jurisdiction over Counts II, III, and IV (*i.e.*, the torts claims) of the January 2, 2008 Complaint, because it "asserts that the claims therein arise solely as a result of a contractual agreement between Plaintiff and [the VA]."

[6] The January 2, 2008 Complaint does not directly appeal or challenge the Contracting Officer's October 23, 2007 Termination of Contract For Cause, pursuant to 41 U.S.C. § 609(a), but instead asserts a breach of contract claim for monetary damages that exceeds $100,000. *See* Compl. ¶¶ 28-35.

*See* Pl. Response at 1 (citing Compl.). Plaintiff acknowledges that the "the court generally does not have jurisdiction to hear claims sounding in tort," but states that the court "***does*** have . . . jurisdiction when the underlying claim 'stems from a breach of contract.'" *Id.* at 1-3 (emphasis in original); *see also Awad* v. *United States*, 301 F.3d 1367, 1372-74 (Fed. Cir. 2002) (holding that claims asserting intentional infliction of emotional distress, false imprisonment, and negligence, that arose from an underlying contractual agreement, are within the United States Court of Federal Claims' jurisdiction); *Holley* v. *United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("[T]he presence of a constitutional issue does not erase the jurisdiction of the [United States] Court of Federal Claims based on a properly brought claim."); *SGS-92-X003* v. *United* States, 74 Fed. Cl. 637, 655 (2007) (rejecting a dismissal of claims since "Plaintiff's complaint is framed as a breach of contract action, not a negligence or intentional tort action"); *Bird & Sons, Inc.* v. *United States*, 420 F.2d 1051, 1054 (1970) (concluding that "where an alleged 'negligent act' constitutes a breach of a contractually created duty, the Tucker Act does not preclude relief").

Counts II and III of the January 8, 2008 Complaint, alleging "intentional and/or negligent actions" by the VA (*e.g.*, erroneous assertions that Plaintiff was not performing with the terms of the Contract, and false assertions that interfered with Plaintiff's contract with VA patients), arise from a breach of contract, because the VA's actions "were intentionally interfering with Plaintiff's ongoing contractual relations with . . . patients." *See* Pl. Response at 3-4. In other words:

> [t]he interference giving rise to Plaintiff's claims, in both Count II and Count III, pertains, directly, to [the VA's] actions in interfering with the underlying contract, and intentionally interfering with the third-party contracts between the patients and Plaintiff that arise as a direct result of [the Contract] entered into between Plaintiff and [the VA] . . . . [T]hese Claims assert that the actions taken by [the VA] interfered with [Plaintiff]'s ability to obtain future contracts and to maintain existing contracts, as a direct result of the termination of [Plaintiff]'s contract with the VA through use of false allegations and a lack of proper investigation.

*Id.* at 5. Therefore, the "false allegations giving rise to [Counts II and III] . . . ***clearly*** result from [the Contract]" and "are not subject to dismissal for lack of jurisdiction." *Id.* at 5-6 (emphasis in original).

Plaintiff also asserts that Count IV, the intentional infliction of emotional distress claim, "seeks recovery arising as a direct result of [the VA's] actions in violating [the Contract] . . . . and [is] judicable in [the United States Court of Federal Claims]." *Id.* at 6 (citing *Bird & Sons*, 420 F.2d at 1054 (holding that "the Tucker Act does not preclude relief" for a claim alleging a negligent act in breach of a contractually-created duty)). Finally, Plaintiff has conceded that the punitive damages claim "was erroneous" and "withdraws any demand for recovery from [the United States Court of Federal Claims] for punitive damages." *Id.* at 6.

**3. The Court's Resolution.**

The Federal Tort Claims Act grants the United States District Courts exclusive jurisdiction over civil actions sounding in tort against the Government. *See* 28 U.S.C. § 1346(b)(1) (providing that "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government[.]"); *see also Awad*, 301 F.3d at 1372 (jurisdiction for claims brought under the Federal Tort Claims Act lies in United States District Courts, not in the United States Court of Federal Claims). In addition, the Tucker Act does not extend to cases sounding in tort. *See* 28 U.S.C. § 1491(a)(1) ("[J]urisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases *not sounding in tort*.") (emphasis added).

The January 2, 2008 Complaint, however, asserts the following claims against the Government: tortious interference with a contractual advantage; tortious interference with a prospective advantage; and intentional infliction of emotional distress. *See* Compl. ¶¶ 36-53 (Counts II, III, and IV).

Plaintiff argues that the court has jurisdiction over Counts II and III of the January 2, 2008 Complaint, for tortious interference with contractual and prospective advantage. *See* Pl. Response at 2 (citing *SGS-92-X003*, 74 Fed. Cl. at 655). The *SGS-92-X003* court, however, determined that the complaint at issue was "framed as a breach of contract action[,]" *i.e.*, that the alleged tort claims allegedly were for Government breaches of promises allegedly in the contract. *See SGS-92-X003*, 74 Fed. Cl. at 655 (complaint alleging that the "United States breached its contract with the Plaintiff when it failed its duty to maintain the secrecy of the Plaintiff's identity, a failure which was the result of careless agents of the DOJ who disclosed the identity of the Plaintiff"); *see also Awad*, 301 F.3d at 1373 (determining that plaintiff was not allowed to bring an alleged tort claim in the district court since it lacked "a basis independent of his alleged contract with the government"); *Id.* ("[Plaintiff] is unable to point to any statutory or common law basis for a duty on the part of the [defendant]. . . . [T]he sole source of any such duty was contractual. . . . [Plaintiff] has not stated an independent tort claim."). In this case, by contrast, the tortious interference claims are not tied to specific promises or duties arising from the August 15, 2006 Contract. *See, e.g.*, Compl. ¶¶ 36-48 (alleging that tortious actions by the VA have interfered with Plaintiff's VA business and relationship with patients); *see also id.* ¶¶ 43-48 (damages are a result of the VA "knowingly and intentionally [making] false statements about [Plaintiff] in a concerted effort to interfere with [Plaintiff's] business relationships").

For these reasons, the VA's alleged tortious actions in Counts II and III did not breach a duty whose source was contractual.[7] *See L'Enfant*, 227 Ct. Cl. at 21 ("Plaintiff has been unable to show a connection between the alleged wrongful misrepresentations and fraud and any contractual obligations[.]"). In addition, the United States Court of Federal Claims has "no authority to award Plaintiff damages for 'emotional distress and pain and suffering.'" *See Hall* v. *United States*, 69 Fed. Cl. 51, 57-58 (2005) (citing *Pratt* v. *United States*, 50 Fed. Cl. 469, 482 (2001) ("Except in limited circumstances related to common carriers and innkeepers . . . the court cannot award damages for the emotional consequences of a breach of contract because such consequences are speculative as a matter of law.")). For these reasons, Count IV of the January 2, 2008 Complaint is dismissed.

Although the court does not have jurisdiction over Counts II, III, and IV of the January 2, 2008 Complaint, those claims may be filed in the appropriate United States District Court.

## IV. CONCLUSION.

For the aforementioned reasons, the Government's May 2, 2008 Partial Motion To Dismiss is granted, and this case is dismissed, without prejudice.

Plaintiff may file a new complaint in the United States Court of Federal Claims, after the breach of contract claim is submitted to the Contracting Officer, with the required certification, pursuant to 41 U.S.C. § 605(a).

The Clerk of the United States Court of Federal Claims is directed to enter judgment in accordance with this Memorandum Opinion And Final Order.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

---

[7] If Plaintiff elects to file a new complaint after complying with 41 U.S.C. § 605(a), if applicable, Counts II and III may be restated as a breach of the implied duty of good faith and fair dealing. *See L.P. Consulting Group, Inc*. v. *United States*, 66 Fed. Cl. 238, 243 (2005) (asserting jurisdiction over and analyzing the merits of an implied duty of good faith and fair dealing contract claim).